I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL POSTAGE PREPAID, TO ~~ALL COUNSEL~~ Plaintiff
~~(OR PARTIES)~~ AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: 7-18-08

DEPUTY CLERK

**FILED**

JUL 18 2008

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY_____DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ESTER BURNETT,<br><br>            Plaintiff,<br><br>      v.<br><br>DR. BRUCE FAECHER, et al.,<br><br>            Defendants. | Case No. CV 08-2745-PSG (MLG)<br><br>MEMORANDUM OPINION AND ORDER<br>DISMISSING FIRST AMENDED<br>COMPLAINT IN PART WITH LEAVE TO<br>AMEND |

Plaintiff Ester Burnett is a California state prisoner who is currently incarcerated at the Centinela State Prison in Imperial, California. On May 27, 2008, Plaintiff filed a first amended complaint in this *pro se* civil rights action under 42 U.S.C. § 1983,[1] alleging that various prison officials violated his Eighth Amendment right to be free from cruel and unusual punishment and failed to comply with the requirements of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. In accordance with its duty to screen civil rights cases filed *in forma pauperis* by prisoners seeking redress from government officials, the complaint is **DISMISSED** in part, with leave to amend, as discussed below.

_____

[1] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

## I.   Facts and Procedural History[2]

From October 2005 until June 2006, Plaintiff was incarcerated at California Men's Colony ("CMC") in San Luis Obisbo, California, where most events relevant to this litigation occurred. Prior to transferring to CMC from another state prison, Plaintiff received treatment for ongoing back pain, which consisted of twice-daily doses of Oxycontin, an opioid painkiller, use of a cane, and a lower bunk assignment. Upon his arrival at CMC in October 2005, Plaintiff visited the prison infirmary and informed the physician, Defendant Luk, of his impairments and treatment history. (Compl. 82.[3]) Dr. Luk declined to continue Plaintiff's prior course of treatment, prescribing painkillers that Plaintiff's medical record allegedly demonstrated were ineffective and refusing to issue a medical "chrono" that would require Plaintiff to have a lower bunk assignment. As a result, Plaintiff was assigned to an upper bunk for his first three days at CMC, which he claims caused him significant back pain.

A few days after seeing Dr. Luk, Plaintiff returned to the prison infirmary and saw another prison physician, Defendant Gallagher. Dr. Gallagher also refused to issue a lower bunk chrono and prescribed pain medication that Plaintiff's medical records allegedly showed were ineffective. (Compl. 84.)

After about ten days, Plaintiff returned to the infirmary

---

[2] The facts discussed in this section are derived from Plaintiff's pleadings, which the Court assumes to be true for purposes of this Order only.

[3] Citations to the complaint refer to the lengthy brief Plaintiff attached to his complaint. Not all of the brief's pages are numbered, but the Court will cite specific page numbers where possible.

seeking further treatment, this time seeing Defendant Faecher. In addition to denying Plaintiff a lower bunk chrono and refusing to prescribe effective medication, Dr. Faecher confiscated Plaintiff's cane, allegedly falsified his notes of Plaintiff's examination to support his denial of appropriate treatment, denied that Plaintiff experienced any significant pain, and declared Plaintiff to be in excellent condition. (Compl. 91-92.) Plaintiff subsequently saw Dr. Faecher on several other occasions, and Dr. Faecher allegedly continued to falsify his treatment notes by omitting Plaintiff's subjective complaints and including incorrect statements regarding the extent of Plaintiff's physical abilities.

In November 2005, Plaintiff received a "no X-bed, [4] lower bunk, lower tier chrono" from an unidentified doctor, which effectively restricted the type of cell and bed to which Plaintiff could be assigned. When Plaintiff asked officers to implement a change in his cell assignment to comply with the chrono, officers told Plaintiff he would have to locate his own bed before being moved. Plaintiff apparently was unsuccessful in finding an appropriate bed, and prison staff refused to find one for him.

In January or February of 2006, a committee of prison officials determined that Plaintiff should be housed in a facility without stairs due to his back pain. The transfer did not occur immediately, but Plaintiff apparently moved to another section of the prison that

---

[4]  According to Plaintiff, an "X-bed" apparently weighs approximately 30 pounds, and inmates are required to lift them in some fashion on a daily basis.

month, where he was housed in a lower bunk, X-bed.[5] In June 2006, still awaiting his medical transfer, Plaintiff fell down the stairs while making his way to the dining hall and was hospitalized for the remainder of his stay at CMC. He was ultimately transferred to a single-level prison on July 27, 2006.

Plaintiff filed numerous administrative appeals throughout this time, several of which were granted. Nevertheless, Plaintiff initiated the present lawsuit on May 2, 2008. This Court dismissed the complaint with leave to amend on May 6, 2008, due to Plaintiff's failure to name any defendants or state a cogent claim for relief. Plaintiff then filed a first amended complaint on May 27, 2008.

## II.  Standard of Review

The Court must dismiss any civil rights complaint filed either *in forma pauperis* or by a prisoner seeking redress from government officials if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2). Because Plaintiff is appearing *pro se*, the Court must liberally construe the complaint in a light most favorable to Plaintiff and take all allegations of material fact as true. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

---

[5] In response to the administrative appeals Plaintiff filed to protest his housing assignments, prison officials apparently concluded that Plaintiff was not assigned to an X-bed during that time, contrary to Plaintiff's assertions. At this stage of the litigation, the Court cannot resolve factual disputes and must assume the truth of Plaintiff's allegations.

4

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *City of Arcadia v. United States EPA*, 411 F.3d 1103, 1106 n.3 (9th Cir. 2005); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)(citation omitted). A complaint should be dismissed if the plaintiff does not proffer sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. V. Twombly*, 127 S. Ct. 1955, 1974 (2007). If either of Plaintiff's causes of action against any of the individual defendants fail to state a claim under this standard, those claims or defendants are properly dismissed at this stage.

## III. Plaintiff's Causes of Action

In the complaint itself, Plaintiff raises two claims against the prison officials: violation of the Eighth Amendment prohibition on cruel and unusual punishment, and failure to comply with the ADA. In the attached briefing, however, Plaintiff raises a host of additional state common law claims, which essentially amount to negligence and medical malpractice claims. The Court need not address those claims at this time, but the federal claims are discussed below.

### A. Americans with Disabilities Act Claim

Plaintiff's complaint includes an allegation that Defendants violated his rights under the ADA. The ADA prohibits discrimination in places of public accommodation: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation

5

1   by any person who owns, leases (or leases to), or operates a place
2   of public accommodation." 42 U.S.C.A. § 12182(a) (West 2007).

3       Plaintiff includes no allegations that even arguably state a
4   claim under the ADA. Plaintiff barely mentions the ADA in his
5   complaint, other than a bald statement that he is claiming an ADA
6   violation. He has alleged no instances of discrimination or
7   identified any benefits or services available to other prison inmates
8   that Defendants denied him based on his alleged disability. The few
9   times he does mention the ADA, Plaintiff appears to argue that the
10  ADA prescribes certain medical treatment that prison officials
11  improperly denied him: "I need this surgery to repair permanent
12  damage to my back done by all the defendants in this action den[y]ing
13  me proper 'Americans with [D]isabilities [A]ct' medical housing
14  required by or ordered by Doctors...." (Compl. 17.)

15      The ADA creates a private cause of action to remedy
16  discrimination against individuals based on their disabilities. It
17  is entirely inapplicable to Plaintiff's allegations in this case,
18  which are centered on the adequacy of medical care the prison has
19  provided him. Plaintiff has alleged no facts that would entitle him
20  to relief under the ADA against any defendant. The claim must be
21  dismissed.

22      **B.   42 U.S.C. § 1983**

23      To state a claim under 42 U.S.C. § 1983, Plaintiff must allege
24  that Defendants, while acting under color of state law, violated a
25  right secured by the Constitution or laws of the United States. *See*
26  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250 (1988). Plaintiff
27  alleges that Defendants violated his right to be free from cruel and
28  unusual punishment under the Eighth Amendment, by refusing to provide

6

him with appropriate housing in accordance with his prescribed medical treatment for back pain. The Eighth Amendment does require the government to provide medical care for incarcerated inmates, though not every breach of this obligation is a constitutional violation. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). In order to establish a constitutional violation, Plaintiff must show that Defendants were "deliberately indifferent" to his "serious medical needs." *Id.* at 104.

In the Ninth Circuit, the deliberate indifference test is comprised of two parts. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)(en banc). First, Plaintiff must establish a "serious medical need," which may mean, for example, "'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000)(quoting *McGuckin*, 974 F.2d at 1059-60). The Court concludes that Plaintiff's allegations of disabling back pain are sufficient to establish a serious medical need.

Second, Plaintiff must show that Defendant's response to this need was deliberately indifferent. *Id.* Prison officials may be deliberately indifferent to a prisoner's serious medical need when they delay, deny or intentionally interfere with medical treatment. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Deliberate indifference exists only where the prison official "knows of and disregards an excessive risk to inmate health or safety."

7

1  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *accord Jackson v.*
2  *McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *McGuckin*, 974 F.2d at
3  1060 ("A defendant must purposefully ignore or fail to respond to a
4  prisoner's pain or possible medical need in order for deliberate
5  indifference to be established."). Under this standard, neither an
6  inadvertent failure to provide adequate medical care, nor mere
7  negligence or medical malpractice, rise to the level of a
8  constitutional violation. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th
9  Cir. 1989). Moreover, a plaintiff's disagreement with the type and
10 adequacy of the medical treatment that he was provided does not rise
11 to the level of a constitutional violation. *Estelle*, 429 U.S. at 107
12 (complaint that a doctor has been negligent in treating a medical
13 condition does not state a valid claim under the Eighth Amendment);
14 *Jackson*, 90 F.3d at 332.

15     The Court will now turn to the defendants Plaintiff has
16 identified to determine whether he has stated a valid section 1983
17 claim against them.[6]

18

19 **IV.  Defendants**

20     Plaintiff's complaint names thirty-three defendants, which
21 includes prison officials who reviewed Plaintiff's administrative
22 appeals, members of the committee that approved Plaintiff for a
23 medical transfer, members of Plaintiff's annual classification review
24 committee, a number of floor officers from Plaintiff's cell area and
25 _____

26     [6] Plaintiff also discusses at length the overcrowded conditions at
   Centinela State Prison. Given that Plaintiff has named no defendants
27 from Centinela, even if a prison overcrowding claim against prison
   officials were cognizable and Plaintiff otherwise framed this matter as
28 a prison overcrowding case, Plaintiff has named no defendants who could
   even arguably be held liable for such conditions.

1 the dining hall, the CMC warden, prison physicians, and the prison
2 officials responsible for inmate transfers. The Court will address
3 each group of defendants in turn.

4     **A.   Administrative Appeals Defendants**

5     Plaintiff names as defendants several prison officials who
6 reviewed Plaintiff's administrative appeals at various levels. These
7 defendants fall into two groups: prison officials who screened out
8 Plaintiff's "emergency" administrative appeals; and prison officials
9 who reviewed and decided Plaintiff's non-emergency administrative
10 appeals on the merits. The Court will discuss each group separately
11 below.

12     **1. Officers Screening Out Plaintiff's Appeals**

13     Plaintiff apparently filed at least one administrative appeal
14 regarding his housing assignment as an "emergency" appeal. Plaintiff
15 alleges that Defendants Connor, Engler, Vela, and John Doe #1
16 rejected this appeal as not falling into one of the specific
17 categories prison regulations deemed appropriate for emergency
18 filing. (Compl. 58, 63.) Plaintiff further alleges that this
19 rejection "made it impossible for me to get help immediately by
20 refusing to process my appeal as a[n] emergency." (Compl. 58.)
21 Plaintiff claims that Defendants' actions violated his constitutional
22 rights.

23     As discussed above, in order to establish liability under 42
24 U.S.C. § 1983, Plaintiff must prove that a person acting under color
25 of state law deprived him of rights, privileges, or immunities
26 secured by the Constitution or laws of the United States. *Parratt v.*
27 *Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by*
28 *Daniels v. Williams*, 747 U.S. 327 (1986). Inmates have no

9

constitutional right to any grievance procedure, *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), let alone an "emergency" procedure. Refusing to process Plaintiff's administrative appeal as an "emergency" appeal does not constitute deliberate indifference to a serious medical need, nor does it in any other way violate Plaintiff's constitutional rights. Plaintiff has failed to state a claim against these defendants under section 1983. Accordingly, Plaintiff's claims against Defendants Connor, Engler, Vela, and John Doe #1 must be dismissed.

### 2. Officers Reviewing Appeals on the Merits

Plaintiff also names as defendants the prison officials who reviewed on the merits or approved Plaintiff's administrative appeals, including Defendants Curry, Green, Freitas, McClain, and, again, John Doe #1. (Compl. 50, 59-65.) These defendants concluded that, after Plaintiff's January 10, 2006, move, he was no longer on an X-bed or an upper bunk. Defendants granted Plaintiff's appeals to the extent that he requested a lower bunk and a non-X-bed. By contrast, Plaintiff maintains that he was on an X-bed during this time, and the reviewers of his appeals reached an incorrect conclusion. Plaintiff contends that by failing to take further action, these Defendants violated his constitutional rights.

A prison official's denial of an inmate's grievance generally does not constitute significant participation in an alleged constitutional violation sufficient to give rise to personal liability. *See Foreman v. Goord*, No. 02 Civ. 7089 (SAS), 2004 WL 1886928 (S.D.N.Y. 2004)(holding prison superintendent's affirmation of the plaintiff's grievance denial insufficient to establish personal involvement necessary for section 1983 liability); *Piggie*

10

1   *v. Parke*, No. 3:96-CV-458RP, 1997 WL 284796, * 3 (N.D. Ind.

2   1997)("The mere act of denying a grievance following a transitory

3   incident, however, does not provide a basis for liability under §

4   1983. Prisoners have no constitutional right to a grievance

5   procedure...")(citation omitted). After inquiry, these defendants

6   determined that Plaintiff's medical needs had been met. Even if they

7   were misinformed, these defendants were not personally involved in

8   the alleged constitutional violation and cannot be held liable under

9   section 1983. Plaintiff's claims against Defendants Curry, Green,

10  Freitas, McClain, and John Doe #1 must be dismissed.

11          **B.    Medical Transfer Committee Members**

12          Plaintiff names as defendants the five members of a committee

13  convened on February 7, 2006, to determine whether Plaintiff should

14  be transferred to another prison due to his physical impairments.

15  These defendants include Trask, Moberg, Morse, Buckley, and Kobata.

16  (Compl. 69-73.) Plaintiff alleges that although the committee members

17  recommended a medical transfer for Plaintiff, which he accepted, the

18  committee members nonetheless ignored his requests for medical

19  housing. (*Id.*)

20          Plaintiff's allegations do not present a constitutional claim.

21  As Plaintiff explains in his briefing, he "went to committee for a

22  medical transfer," and the committee approved that transfer. (Compl.

23  69.) Although Plaintiff complains that the committee members "ignored

24  [his] request [and] plea[]s for medical housing," Plaintiff does not

25  allege that these defendants' responsibilities extended beyond

26  determining Plaintiff's eligibility for a medical transfer. The mere

27  fact that Plaintiff informed the committee members that his present

28  housing did not conform to the chrono does not automatically render

11

1  those members liable for a constitutional violation. Were it
2  otherwise, an inmate could name as a defendant every prison official
3  with whom he ever spoke regarding an alleged constitutional
4  violation. Personal involvement in the constitutional violation is
5  required for liability under section 1983, *Rizzo v. Goode*, 423 U.S.
6  362. 372-73 (1976), and knowledge of a violation alone will not
7  suffice. Plaintiff has failed to allege the committee members were
8  personally involved in the alleged constitutional violation.
9  Plaintiff's claims against Defendants Trask, Moberg, Morse, Buckley,
10 and Kobata must be dismissed.
11      **C. Annual Classification Committee Members**
12      Plaintiff appeared for his annual classification review on May
13 9, 2006. Defendants Ruano, Williams, and Clark were members of the
14 review committee. Plaintiff claims that he informed these defendants
15 about his pain and his allegedly deficient housing situation, but
16 that Defendants "refused to even address my health [and] safety
17 concerns." (Compl. 79.) At that time, Plaintiff had a lower bunk, no
18 X-bed chrono, and he had been approved for a medical transfer to a
19 prison without stairs. It is unclear from Plaintiff's allegations
20 what action the committee members should have taken that they failed
21 to take, and how that inaction violated Plaintiff's constitutional
22 rights. Again, the mere fact that Plaintiff informed the committee
23 members of his housing situation does not render them personally
24 involved in the alleged constitutional violation or subject to
25 liability under section 1983. Plaintiff has failed to allege facts
26 sufficient to state a claim against these defendants. Accordingly,
27 Plaintiff's claims against Defendants Ruano, Williams, and Clark must
28 be dismissed.

### D.   Floor Officers

Plaintiff names as defendants a number of correctional officers that he approached at various times in attempting to facilitate his transfer to a cell comporting with his medical chrono. Plaintiff alleges that on November 29, 2005, he showed the chrono to Defendant Shorter, the floor officer in charge of inmates where Plaintiff's cell was located, and requested a cell change. (Compl. 48.) Shorter responded that he "didn't deal with such chronos" and provided no assistance. (*Id.*) Plaintiff alleges that on that same day he also approached the correctional sergeant (John Doe #5), lieutenant (John Doe #4), and captain (John Doe #3), who were Shorter's supervisors and were successively higher in the prison hierarchy. (Compl. 52-56.) John Does #3 and #4 informed Plaintiff that he would have to find his own bed in accordance with prison policy, while John Doe #5 "said he would take care of it but failed to do so." (*Id.*) Plaintiff alleges that he remained on an X-bed at that time.

Plaintiff was subsequently transferred to another section of the prison, where he was again given an X-bed. Plaintiff approached two floor officers from that section, Defendants John Doe #2 and Steck, seeking a bed that complied with his medical chrono. (Compl. 67.) Both officers told Plaintiff that prison policy required him to find his own bed. Plaintiff later spoke to four additional officers, on April 12, 2006, including Defendants Martinez, Galapon, Hawkins, and Ivie. (Compl. 75-78.) It appears from the documents Plaintiff submitted that these officers were located in the same area as the dining hall (B-Quad), which is a separate area from where Plaintiff was housed at that time (C-Quad). These officers either walked away without responding to Plaintiff's inquiries, or told him that he

needed to speak to someone else.

As discussed above, prison officials are deliberately indifferent to an inmate's serious medical need when they delay, deny, or intentionally interfere with medical treatment, *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988), including where an official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Assuming Plaintiff's allegations are true, these defendants knew that Plaintiff had significant back pain and that a doctor issued a chrono recommending he be given a lower bunk that was not an X-bed. Placing all responsibility for finding an appropriate bed on Plaintiff may constitute intentional interference with Plaintiff's medical treatment for a serious medical need.

Plaintiff still must allege a defendant's personal involvement in the constitutional violation in order to state a claim for relief. It is reasonable to assume that the officers from B-Quad had no responsibility or control over Plaintiff's cell assignment on C-Quad. They worked in a different area of the prison, and, according to Plaintiff, none of them claimed any responsibility for Plaintiff's housing or even offered him any suggestions. Plaintiff's allegations state an insufficient connection between these defendants and the alleged constitutional violation, given the high unlikelihood that they would have any involvement in Plaintiff's housing assignment. Accordingly, Defendants Martinez, Galapon, Hawkins, and Ivie must be dismissed.

According to Plaintiff's allegations, the remaining floor officers worked in the area in which he was housed, but it is less clear which of these defendants may have responsibility for the

14

1  housing assignments. On the record before the Court, it is impossible
2  to discern which of these officers may actually have such
3  responsibility, and the Court is unwilling to guess which Defendant
4  may be the right one. Accordingly, Plaintiff's claims against
5  Defendants Shorter, Steck, and John Does #2-5 arguably state a
6  cognizable claim for relief.

7      **E.   Warden Marshall**

8      Plaintiff names CMC warden, John Marshall, as a defendant.
9  Plaintiff alleges that Marshall is ultimately responsible for his
10 subordinates' actions and that Marshall implemented and upheld the
11 policy and procedure requiring inmates to find their own beds.[7]

12     Supervisors generally are not responsible for the conduct of
13 their subordinates on a theory of vicarious liability in civil rights
14 actions brought under 42 U.S.C. § 1983. *See Monell v. Dep't of Social*
15 *Svs.*, 436 U.S. 658, 691-92 (1978); *Jeffers v. Gomez*, 267 F.3d 895,
16 915 (9th Cir. 2001). A supervisor may be liable under section 1983
17 only if he or she was personally involved in the constitutional
18 deprivation, or if there was a sufficient causal connection between
19 the supervisor's wrongful conduct and the constitutional violation.
20 *Jeffers*, 267 F.3d at 915; *Redman v. County of San Diego*, 942 F.2d
21 1435, 1446-47 (9th Cir. 1991); *Hansen v. Black*, 885 F.2d 642, 645-46
22 (9th Cir. 1989).

23     The vast majority of Plaintiff's allegations against Marshall
24 describe the actions of other prison officials, but Marshall cannot
25 be held vicariously liable for his subordinates' unconstitutional

26 _____

27     [7] Plaintiff also faults Marshall for approving the denial of
   Plaintiff's administrative appeals. For the reasons discussed in
28 section IV(A)(2) above, this allegation fails to state a claim for
   relief.

1  acts under section 1983. Only if he is directly involved in a
2  constitutional  violation  will  liability  attach.  Plaintiff's
3  allegations are insufficient to state a claim for relief against
4  Marshall.

5      Plaintiff also claims that Marshall was responsible for the
6  "find-your-own-bed" policy at the prison. A supervisor may be liable
7  if he or she implemented a policy so deficient that the policy itself
8  repudiates constitutional rights and is the "moving force" of the
9  constitutional violation. *Hansen*, 885 F.2d at 646 (citing *Thompkins*
10 *v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)). A policy permitting
11 prisoners to find their own cells and cellmates is not facially
12 unconstitutional, even if individual officers apply the policy in an
13 unconstitutional manner. As Plaintiff describes it, however, the
14 policy as promulgated and implemented by Marshall is that inmates are
15 only required to find their own beds when they receive a medical
16 chrono for a particular type of bed. Such a policy could itself
17 constitute deliberate indifference to an inmate's serious medical
18 needs. Accordingly, Plaintiff has stated a claim for relief against
19 Defendant Marshall under these allegations.

20    **F.   Prison Physicians**

21    Plaintiff names as defendants three prison physicians,
22 Defendants Luk, Gallagher, and Faecher, and the prison's health care
23 manager, Defendant Greenman. Plaintiff alleges that Defendants Luk,
24 Gallagher, and Faecher refused to give him a lower bunk, no X-bed
25 chrono and a prescription for Oxycontin when he arrived at CMC.
26 According to Plaintiff, his medical record demonstrated that the
27 painkillers Defendants prescribed did not work, but Defendants
28 deliberately disregarded his medical records and prior physician's

1   orders.

2       An inmate's disagreement with the type and adequacy of the
3   medical treatment that he was provided does not rise to the level of
4   a constitutional violation. *See Estelle v. Gamble*, 429 U.S. 97, 107
5   (1976). "[W]here a defendant has based his actions on a medical
6   judgment that either of two alternative courses of treatment would
7   be medically acceptable under the circumstances, plaintiff has failed
8   to show deliberate indifference, as a matter of law." *Jackson v.*
9   *McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). On the other hand, when
10  prison officials and doctors deliberately ignore the express orders
11  of an inmate's prior physician "for reasons unrelated to the medical
12  needs of the prisoner," a constitutional violation may have occurred.
13  *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992)(citations
14  omitted), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194
15  (2001).

16      Plaintiff alleges that Defendants refused to provide him with
17  effective pain medication, prescribing instead medication that
18  Plaintiff's prior physicians had already found to be ineffective, as
19  demonstrated by his medical record. Additionally, Plaintiff alleges
20  that Defendants refused to provide him with a lower bunk, no X-bed
21  chrono or follow the chrono given by prior physicians, because
22  "correctional does not want us to [i]ssue inmates lower bunk lower
23  tier chrono[s]." (Compl. 82.) If Defendants directly contravened a
24  prior physician's express orders and refused to provided necessary
25  treatment for reasons other than Plaintiff's medical needs, then
26  Plaintiff may have a claim for deliberate indifference. Plaintiff's
27  allegations are sufficient to state a claim against Defendants Luk,
28  Gallagher, and Faecher.

1    Plaintiff's claims against Dr. Greenman, on the other hand,
2    arise solely from his supervisory role: "Greenman as the health care
3    manage of [CMC] was respon[si]ble for reviewing my medical record to
4    make sure I received the proper medical treatment." (Compl. 86.)
5    Plaintiff also alleges that Dr. Greenman failed to ensure that prison
6    physicians followed the proper procedures, and that he approved of
7    those physicians' actions.

8    As discussed above, supervisors are not liable for the actions
9    of their subordinates absent some personal involvement in the alleged
10   constitutional violation. *Monell v. Dep't of Social Svs.*, 436 U.S.
11   658, 691-92 (1978). Here, Plaintiff alleges no personal involvement
12   by Dr. Greenman in any action giving rise to a potential
13   constitutional violation. Accordingly, Plaintiff has failed to state
14   a claim for relief, and Plaintiff's claims against Defendant Greenman
15   must be dismissed.

16   **G.    Officials Responsible for Inmate Transfers**

17   Although Plaintiff was approved for a medical transfer in
18   February 2006, he remained at CMC until July 27, 2006. While waiting
19   to be transferred, Plaintiff fell down the stairs and was
20   hospitalized. Plaintiff names as defendants Jane/John Does #6 and #7,
21   the prison officials who failed to ensure Plaintiff was timely
22   transferred to accommodate his medical condition.

23   If the prison officials responsible for Plaintiff's transfer
24   were aware of a substantial risk of harm to Plaintiff and
25   intentionally delayed his transfer, resulting in harm to Plaintiff,
26   then Plaintiff may have a constitutional claim against those
27   officials for deliberate indifference. Though any number of
28   legitimate reasons might explain the delay in transferring Plaintiff

to an appropriate facility, the Court cannot at this stage make assumptions as to what those reasons might be. Accordingly, Plaintiff's allegations are sufficient to state a claim against Jane/John Doe #6 and #7.

## V.   Conclusion

For the reasons stated above, the complaint is **DISMISSED** in part, with leave to amend.

It is hereby **ORDERED**:

1. Defendants Connor, John Doe #1, Engler, Vela, McClain, Freitas, Curry, Green, Trask, Moberg, Morse, Buckley, Kobata, Martinez, Galapon, Hawkins, Ivie, Ruano, Williams, Clark, and Greenman are **DISMISSED WITHOUT PREJUDICE**. The remaining defendants are Defendants Marshall, Shorter, Steck, Luk, Gallagher, and Faecher, and John Does #2-7.

2. Plaintiff's claim for an Americans with Disabilities Act violation is **DISMISSED WITHOUT PREJUDICE**.

3. Plaintiff has until August 18, 2008, to file a second amended complaint that remedies the defects identified in this Order and complies with the requirements of the Federal Rules of Civil Procedure and Local Rule 15-2. Any amended complaint must bear the docket number in this case and must be labeled "Second Amended Complaint." Plaintiff is advised that an amended complaint is a document stating one or more causes of action against one or more defendants and *is complete in itself without reference to the original complaint or any other pleading, attachment or document*. Local Rule 15-2.

4. If Plaintiff fails to timely file a second amended complaint, or if the second amended complaint fails to properly plead a cause of action against the defendants dismissed in this Order, Plaintiff is advised that the action against such defendants will be subject to dismissal with prejudice for failure to diligently prosecute or failure to state a claim, or both. Service will be ordered as to the remaining named defendants, against whom Plaintiff has stated a viable claim.

5. The Court's deputy clerk shall serve on Plaintiff a copy of this Order and a blank civil rights complaint form bearing the case number assigned to this action and marked to show that it is a "Second Amended Complaint." If Plaintiff chooses to continue prosecuting this action against the defendants dismissed in this Order, Plaintiff must use this form to the extent possible and not simply attach other documents to it and attempt to incorporate claims by reference to the attachments. He may, however, attach additional pages, not to exceed 15 pages, to detail his allegations, if necessary.

**SO ORDERED.**

Dated: July 16, 2008

Marc L. Goldman
United States Magistrate Judge

20